IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| PRIORITY ACCESS SOLUTIONS CORPORATION<br><br>          Plaintiff,<br>          Counterclaim-Defendant<br><br>     v.<br><br>IBM a/k/a INTERNATIONAL BUSINESS MACHINES CORPORATION<br><br>          Defendant,<br>          Counterclaim-Plaintiff. | Civil Action No. 6:07cv447 (LED) |

## MOTION BY
## IBM CORPORATION FOR ENTRY OF PROTECTIVE ORDER

Defendant/Counterclaim-Plaintiff IBM Corporation ("IBM" or "Defendant"), by its attorneys of record, moves the Court for entry of the attached Protective Order Regarding the Confidentiality of Discovery Materials.  IBM has conferred with Plaintiff/Counter-Defendant Priority Access Solutions Corporation ("PAS") concerning the terms of a protective order to protect confidential information produced by the parties in the litigation, including technical information relating to IBM's accused Rational ClearCase products, and the parties have agreed on most of the terms of the attached proposal.  Two issues, however, remain unresolved:

    (1)    the terms of access to confidential computer code, including source code; and

    (2)    the need for a prosecution bar for recipients of confidential information who also participate in patent prosecution or advise their clients concerning patent prosecution and patent-related business decisions.

Both of these issues are of utmost concern to IBM, which has already produced extensive confidential information and is preparing additional confidential information for production pursuant to P.R. 3-3 and 3-4, yet of little concern to PAS, which has so far produced only three pages of documents designated confidential. IBM's proposal for the Protective Order is attached as Exhibit A.

## I. NATURE OF THE CASE

PAS claims infringement by certain IBM Rational ClearCase products of U.S. Patent No. 5,717,604, titled "Network Monitoring System for Tracking, Billing and Recovering Licenses," which PAS claims to have the right to enforce. IBM's Rational ClearCase is a software tool for developing, testing, and configuring software, and it incorporates certain licensing technology. IBM's accused ClearCase products do not infringe the '604 patent, but IBM's defense of this case requires that it provide PAS with highly confidential material concerning its ClearCase products and the licensing technology that they incorporate.

## II.    IBM'S CONFIDENTIAL SOURCE CODE REQUIRES EXCEPTIONAL PROTECTION FROM UNAUTHORIZED DISCLOSURE

Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure authorizes this Court, for good cause shown, to order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." The Code[1] for IBM's accused Rational ClearCase products is highly proprietary and extremely confidential, and it deserves a heightened level of protection, even as compared to other confidential materials

---

[1] IBM's proposed Protective Order identifies "Code" to mean Source Code or object, machine, or other computer code. The term "Source Code" means computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, other translator or other data processing module. *See* Protective Order attached as Exhibit A, Para. 7.

that are routinely produced – and protected – during litigation. The fact that PAS has sued IBM for patent infringement and has put IBM's Code at issue does not diminish IBM's interest in protecting the Code.

IBM's proposed Protective Order provides for the production of Code in a manner that best protects its highly confidential nature by limiting production to only one electronic copy of the Code on a non-networked medium that is to be stored in a locked room accessible to outside counsel only. No other electronic copies are permitted, and PAS's outside counsel would be required to notify IBM whenever they print any part of the Code to hard copy. Specifically, Paragraph 9 of IBM's proposed Protective Order provides:

> 9. Where Discovery Material designated as OUTSIDE ATTORNEYS' EYES ONLY is Code, such Discovery Material shall be subject to the following provisions:
>
> (a) The party producing such Code will, to the extent such Code exists in an electronic format, produce that Code (i) by copying it in an electronically searchable format to a stand-alone, non-networked (with all wireless functionality disabled or removed) laptop or desktop computer having software for Code review, searching, and printing; (ii) by copying it onto a hard drive in an electronically searchable format, along with the identification of software that can be used to review, search or print that Code; or (iii) by copying it onto a DVD, along with the identification of software that can be used to review, search or print that Code. If the Producing Party opts to use option (i), the laptop or desktop computer will include operable ports and drivers for communication with standard mouse, keyboard, display, and printer peripherals. If the Producing Party opts to use option (ii) or (iii), the laptop and/or desktop computer used by the Receiving Party to review, search or print portions of the Code must be a stand-alone, non-networked (with all wireless functionality disabled or removed) laptop or desktop computer. Electronically searchable format means a fully text-searchable version of the Code.
>
> (b) The computer, hard drive or DVD containing the Code will be delivered to a lockable room at the offices of the Receiving Party's law firm of record. The Receiving Party's law firm of record will keep the computer secured in the room, limiting access to the room and the computer, hard drive, or DVDs in accordance with Paragraph 8. The room in which the Code is stored must be locked when not in use.

(c)     No electronic copies of the Code will be permitted.  The Receiving Party may make a reasonable number of paper copies of certain limited portions of Code, such as routines or subroutines.  Upon making any such paper copies, the Receiving Party shall notify the Producing Party in writing what lines have been copied and how many copies were made within two (2) business days.  All paper copies shall remain at the offices of the Receiving Party's counsel and returned to the locked room described in subpart (b) above at the end of each business day.  The Receiving Party must maintain said paper copies in a confidential manner using commercially reasonable security precautions to maintain the confidentiality of any copies.  The Receiving Party is not permitted to make or remove any wholesale copies of the Code from the computer, hard drive or DVDs.

(d)     Following the electronic production of Code pursuant to Paragraph 9(a), the Receiving Party may request in writing that the Producing Party produce paper copies of reasonable portions of the Code, with production numbers and confidentiality labels in a manner consistent with this Protective Order.  The Producing Party shall produce such paper copies (or, at the election of the Producing Party, PDF or other image formats) within five (5) business days of such written request.  The Receiving Party shall not use any produced documents derived from the Code to create any electronic copies of the Code except in PDFs or other image formats for attachment to a brief, use as a trial or deposition exhibit, or as an attachment to a paper filed under seal with the Court.  Any such paper copies of the Code once numbered, labeled and produced shall be maintained by the Receiving Party at outside counsel's office in accordance with Subparagraph 9(c) above, except that it may be removed from said offices (i) when used in depositions, (ii) when used as an attachment to a Court filing, (iii) when used in Court, (iv) when used by an outside expert qualified under Paragraph 7(b), or (v) when written consent is obtained from the Producing Party's counsel for other uses.  If a Receiving Party elects to provide Code to a qualified outside expert, it must (1) notify the Producing Party in writing of the specific portion of the Code (by Bates number) being removed from the offices of the Receiving Party's counsel, (2) identify to whom the Code is being provided and (3) confirm that the qualified outside expert will maintain all paper copies of the Code in a locked room at his/her offices.  Within three (3) business days of receiving said written notification, the Producing Party has the right to state an objection to the removal of paper copies of the Code to an expert, stating the specific reasons for the objections.  If the parties are unable to resolve the objections within five (5) business days of the initial notice sent by the Receiving Party, the Producing Party may file a motion requesting relief and protection.  Pending a ruling by the Court upon any such objection(s), the Code shall not be removed from the offices of the Receiving Party's counsel.

PAS has objected to two portions of IBM's proposed provision:

(1)    PAS wishes to receive <u>two</u> electronic copies of the Code: one electronic copy for its outside counsel of record, Simon Passanante, and one electronic copy for an as-of-yet-undesignated expert consultant or expert witness, who may, according to PAS, turn out to reside outside of St. Louis, Missouri, where Simon Passanante is located.

(2)    PAS wishes to be allowed to print IBM Code without needing to inform IBM what parts of the Code it is printing.

Good cause exists for the source code restrictions that IBM proposes.

**A.    Good Cause Exists To Provide PAS's Outside Counsel With Only One Electronic Copy Of IBM's Highly Confidential Source Code**

IBM's proposed restrictions are reasonable and consistent with earlier rulings of this Court.  *See* Protective Order, ¶14, *American Video Graphics, L.P. v. Hewlett-Packard Co.*, Case No. 6:04-CV-397-LED (E.D. Tex. Feb. 14, 2005) (restricting access to source code to persons who are subject to a prosecution bar and who may view the code only on standalone, non-networked computers at a single secure facility; and further allowing paper copies of code only when such copies are labeled with Bates numbers and confidentiality designations, kept in a secure container, and logged) (Ex. B at 6-7).  Other courts in this District have issued similar protective orders even when vigorously opposed.  *See, e.g.,* Protective Order, ¶7, *Caritas Techs., Inc. v. Comcast Corp.*, Case No. 2:05-CV-339-DF (Jan. 5, 2006) (Folsom, J.) (following extensive briefing, requiring production of only a single electronic copy of source code at the office of counsel of record for the ***producing*** party on a standalone, non-networked computer; further requiring a log identifying, for each time such electronic code is accessed, the name, date, time of access, and the portions of any code that were printed; and restricting the use of hard

copies of code, including allowing the producing party to object, meet and confer, and file a motion for a protective order after the receiving party requests to have code printed, requiring hard copies of code to be logged and labeled with Bates numbers and confidentiality designations, and restricting the use of those hard copies at depositions) (Ex. C at 5-7).

Contrary to the routine practice in this District, PAS asks IBM to produce more than one electronic copy of its highly confidential source code based on the hypothetical – but unrealized – possibility that PAS may retain an expert in a city other than the city where its counsel of record resides. It is critical that only PAS's outside counsel of record in this case, who are officers of this Court, have control over IBM's electronic copy of its Code, where such access is restricted as set out in IBM's proposed Paragraph 9. PAS may designate an expert or consultant pursuant to the provisions of Paragraph 8(b) of the proposed Protective Order, to which PAS has agreed, and that expert or consultant will have adequate access to the electronic Code at the offices of PAS's counsel of record pursuant to Paragraph 9 as well as to certain paper copies of the Code provided according to the terms of Paragraph 9(d) of IBM's proposed Protective Order.

PAS has offered no reason why such access is insufficient other than to note the possibility that its expert witness or consultant may be inconvenienced by travel to the offices of Simon Passanante in St. Louis to review the electronic Code. Such a slight burden is more than outweighed by IBM's interest in maintaining strict control over its extremely sensitive Code and the risks presented by allowing an electronic copy of IBM's Code to reside in the unprotected home or office of a consultant or expert witness for PAS over whom IBM has no control. If PAS chooses to use an expert in a different locale than its counsel, PAS should bear the responsibility to provide access to IBM's Code in a manner that fully protects IBM's confidentiality and proprietary interest.

### B. Good Cause Exists To Regulate Printing Of IBM's Highly Confidential And Proprietary Code

IBM's proposed limitations on the printing of Code in Subparagraph 9(d) are fully necessary to protect IBM's legitimate right to maintain the strictest confidentiality of its Code. IBM's right to protect its trade secret Code outweighs PAS's wish for the convenience of printing hard copies of the Code without notifying IBM. In any instance where PAS requires a printout of the Code, Subparagraphs 9(c) and (d) of IBM's proposed Protective Order permit PAS to make a reasonable number of copies, with notice to IBM within two days, or to request that IBM produce reasonable, printed portions of Code in Bates-labeled form with appropriate confidentiality designations. Allowing PAS to print hard copies without notice to IBM increases the risk that excessive portions of Code will be printed and that unmarked copies of the Code could be inadvertently placed and stored with non-confidential documents. PAS should not be permitted to jeopardize IBM's most sensitive documents when reasonable protective provisions, such as those proposed by IBM, are available and not unduly burdensome.

### III. A PROSECUTION BAR IS NECESSARY TO PROTECT IBM'S CONFIDENTIAL DISCOVERY MATERIAL FROM DISCLOSURE OR USE IN COMPETITIVE DECISION-MAKING, INCLUDING PATENT PROSECUTION

In assessing the manner of protection of confidential information, courts balance the risk of disclosure (and resulting harm) to the disclosing party against the risk that the protective order will impair the prosecution or defense of the other party's claims. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Courts restrict access to confidential information where such access would create "an unacceptable opportunity for inadvertent disclosure." *United States Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). A

significant factor in this analysis is whether the individual seeking access to the confidential information is involved in "competitive decision-making."  *Id.* at 1468.

An attorney who prosecutes patent applications or advises clients concerning their prosecution of patents is necessarily involved in competitive decision-making for those clients. *See In re Papst Licensing, GmbH, Patent Litigation*, 2000 WL 554219 at *4 (E.D. La. 2000) (patent prosecution is an "intensely competitive decisionmaking activity."); *Commissariat á L'Energie Atomique v. Dell Computer Corp.*, Case No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782 at *8 (D. Del. May 25, 2004) ("Prosecuting patent applications 'involves decision of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] project[s] sales to be most critical.'") (citation omitted).  An attorney who acts as both patent prosecutor and litigation counsel may face an untenable conflict between the duty to maintain confidentiality of information provided in litigation and the obligation of candor and good faith to the Patent & Trademark Office during the prosecution of patents in the same technical field.  *See* 37 C.F.R. 1.56.  The PTO rules *require* the disclosure of information material to patentability during patent prosecution, while the protective order *forbids* such disclosure.  The prosecution bar best resolves this tension, and, not surprisingly, such prosecution bars have become commonplace in patent litigation.

IBM's proposed Protective Order therefore includes the following provision, which does not seek to preclude access by PAS's counsel to IBM's confidential material, as provided in Protective Order paragraphs 5 and 7, but rather provides a bar to participation in patent prosecution and advice by any counsel whom PAS chooses to make a recipient of such confidential information:

> 10. For a period commencing with the receipt of any Discovery Materials designated as CONFIDENTIAL or OUTSIDE ATTORNEYS' EYES ONLY and terminating one

year following the conclusion of the present litigation (including appeals), persons who have been granted access to such Discovery Materials under this Protective Order shall not participate in or offer advice concerning the preparation or prosecution of any patent application, reissue proceeding, or reexamination proceeding involving any patent or patent application having one or more claims related to the Disclosed Technology. For the purposes of this Paragraph, the "Disclosed Technology" is software development tools and associated licensing technology.

The circumstances of this case make the entry of a prosecution bar particularly compelling.

### A. The Nature Of PAS's Business Presents A Heightened Likelihood That Its In-House Counsel Engage In Competitive Decision-Making, Including On Matters Of Patent Prosecution

Plaintiff PAS is a subsidiary of Acacia Research Corporation, which is part of the Acacia Technologies Group ("Acacia"). *See* Pl. Priority Access Solutions Corporation's Disclosure Statement Pursuant To Fed. R. Civ. P. 7.1 (D.I. 28, filed Mar. 20, 2008). According to its own public announcements and SEC filings, Acacia "develops, acquires, licenses and enforces patented technologies" used in a variety of industries. *See* Acacia Research Corporation Form 10-Q For The Quarterly Period Ended June 30, 2007 (Ex. D at 10).

To date, PAS has made no representation concerning the patent prosecution involvement, let alone the participation in competitive decision-making, of PAS's in-house counsel. Given the nature of Acacia's business – which is acquiring, developing, and enforcing patents – PAS's in-house counsel, who would have access to IBM's "CONFIDENTIAL" discovery material under agreed Paragraph 5 of the Protective Order, are likely to be involved in advising PAS and Acacia on matters of patent development, acquisition and prosecution – decisions that are inherently competitive because they seek to extract revenue from IBM through patent licensing and

9

litigation.[2] IBM is entitled to protect its confidential material from becoming the building block for further PAS or Acacia patent development.

### B. PAS's Lead Outside Litigation Counsel Is A Licensed Patent Prosecutor

PAS's lead outside trial counsel, Anthony Simon, is touted on the web site of his firm, Simon Passanante, as "a registered patent attorney" who "has experience in the preparation and prosecution of patent applications in the mechanical and electrical arts." (Ex. E at 2.) Even if Mr. Simon is not currently engaged in patent prosecution, as PAS maintains, he may well undertake such work again in the future, whether directly prosecuting patent applications or advising clients in such prosecution matters. As noted above, a patent attorney has a sworn duty to the U.S. Patent Office to formally disclose material information (including information that may be confidential to another party) that might affect the patentability of patent application claims. The patent attorney must also attempt to amend patent claims so that they do not describe previously-existing technology. IBM and PAS have already agreed that confidential discovery material "[s]hall be used only for purposes of this litigation." (Ex. A at Para. 3(b).) Therefore, any counsel for PAS, whether in-house or outside, who engages in or advises in patent prosecution matters for PAS <u>or for any other client</u> in the disclosed field may face an untenable conflict between violating the duty of disclosure to the U.S. Patent Office and violating the duty not to disclose confidential information provided under the Protective Order in this litigation. The patent prosecution bar that IBM proposes will prevent such a conflict. *See*

---

[2] The prosecution bar that IBM proposes does not apply to recipients of "Confidential Financial" materials only under Paragraph 6, a category of confidential material that the parties created as part of their efforts to resolve other disagreements concerning access to confidential information.

*Visto Corp. v. Seven Networks, Inc.*, Case No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) ("The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (*e.g.* drafting claims during patent prosecution).").

C. **Prosecution Bars Are Commonly Entered in Patent Litigation And IBM's Proposed Bar Is Narrowly Tailored**

Although PAS's counsel has objected to the inclusion of this provision, such bars are commonplace in patent litigation. *See, e.g.*, Order at 1, *z4 Techs., Inc. v. Microsoft Corp.*, Case No. 2:04-CV-335-LED (E.D. Tex. Apr. 11, 2005) (granting motion that requested prosecution bar) (Ex. F at 1). Courts have often held that outside litigation counsel cannot access confidential information from the adversary of their client and also act as prosecution counsel. *See, e.g., Medtronic, Inc. v. Guidant Corp.*, 2001 WL 34784493 at *5 (D. Minn. 2001) ("Defendant must make choices among its counsel and decide who will access 'Attorney Eyes Only' information and who will prosecute patents during the relevant time period."); *Dell Computer*, 2004 WL 1196965 at *3 (D. Del. 2004) (holding that if counsel has access to confidential information, "they will be barred from prosecuting patents 'relating to the broad subject matter of the patents in suit' for one year after the conclusion of th[e] litigation, including appeals").

IBM's proposed prosecution bar is narrowly tailored to protect IBM's confidential information from the risk of disclosure or misuse. The bar does not seek to disqualify PAS's attorneys as litigation counsel, and the entry of IBM's proposed prosecution bar would not impede PAS's ability to litigate this case; rather it puts the burden on these recipients of IBM's confidential information to avoid possible disclosure by restricting patent prosecution for a limited time in the area of the disclosed technology.

In light of the nature of PAS/Acacia's business, the risks of competitive decision-making activities by PAS's counsel, PAS lead trial counsel's own experience as a patent prosecutor, and the sensitivity of the IBM information at stake, IBM ask this Court to preserve the status quo by requiring a prosecution bar.

## IV.   CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court enter the proposed Protective Order attached hereto as Exhibit A.

DATED:  April 11, 2008

                              Respectfully submitted,


                                /s/ Monique Drake
                              Monique Drake

Mark N. Reiter
Lead Attorney
Texas Bar No. 16759900
mreiter@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:   (214) 571-2900

Monique Michal Drake
Colorado Bar No. 27171
mdrake@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202
Telephone:  (303) 298-5700
Facsimile:  (303) 296-5310

Scott E. Stevens
Texas Bar No. 00792024
STEVENS LAW FIRM
P.O. Box 807
Longview, Texas 75606
Telephone:  (903) 753-6760
Facsimile:  (903) 753-6761
scott@seslawfirm.com

ATTORNEYS FOR DEFENDANT/
COUNTERCLAIM-PLAINTIFF
INTERNATIONAL BUSINESS MACHINES
CORPORATION

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by e-mail and/or fax, on April 11, 2008.

/s/
Monique Drake

## CERTIFICATE OF CONFERENCE

The plaintiff and defendant have conferred concerning the proposed Protective Order. Counsel has complied with the meet and confer requirement in Local Rule CV-7(h). The motion is opposed.

Counsel for Defendant IBM, Monique Drake and Amanda Tessar, conferred by telephone with counsel for Plaintiff PAS, Timothy Grochocinski, on several occasions, including on March 10, 2008 and most recently on April 1, 2008. The parties agree on most of the terms of the proposed Protective Order. PAS's counsel has informed IBM's counsel that it will not accept the proposed restrictions on access to computer code or a prosecution bar. Thus, no agreement could be reached as to these two issues, and discussions have conclusively ended in an impasse, leaving these two open issues for the Court to resolve.

/s/
Monique Drake